1
2
3
4
5                                                           FILED: 11/19/2015
6
7                         UNITED STATES DISTRICT COURT
8                         CENTRAL DISTRICT OF CALIFORNIA
9
10   VALERIE DORFMAN, DAVID            )   CASE NO. CV 15-06370 MMM (ASx)
11   DORFMAN and ROBERT DORFMAN,       )
     Deceased, by and through his successor in )   ORDER DENYING PLAINTIFF'S
12   Interest, VALERIE DORFMAN,        )   MOTION FOR LEAVE TO AMEND AND
                                       )   MOTION TO REMAND
13            Plaintiffs,              )
                                       )
14            vs.                      )
                                       )
15   MASSACHUSETTS CASUALTY            )
     INSURANCE COMPANY and DOES 1      )
16   through 100, Inclusive,           )
                                       )
17            Defendants.              )
18   _____
19
20        Valerie Dorfman, individually and as successor in interest to her late husband Robert

21   Dorfman, and David Dorfman, Valerie's and Robert's adult son (collectively "the Dorfmans"), filed

22   this action against Massachusetts Casualty Insurance Company ("MCIC") and various fictitious

23   defendants in Los Angeles Superior Court on April 10, 2015.[1]  MCIC was served on July 22, 2015,[2]

24   and filed a timely notice of removal on August 20, 2015, invoking the court's diversity jurisdiction.[3]

25        [1]Defendant Massachusetts Casualty Insurance Company's Notice of Removal ("Notice of
26   Removal"), Docket No. 1 (Aug. 20, 2015).

27        [2]Id. at 1.

28        [3]Id. at 6.

The Dorfmans are residents of California, and MCIC is a Massachusetts corporation with its principal place of business in that state.[4]  While the Dorfmans seek compensatory and punitive damages in an amount to be proved,[5] MCIC asserts that their claim seeks to recover, *inter alia*, $264,865 in past disability benefits as well as damages for wrongful death, which often exceed $75,000.  As a result, it contends, the amount in controversy requirement is satisfied.[6]

On September 18, 2015, the Dorfmans filed a motion for leave to file a first amended complaint and to remand the case to Los Angeles Superior Court; they seek to add California citizens as defendants, which would destroy diversity jurisdiction.[7]  On September 30, 2015, the Dorfmans filed a proposed first amended complaint that names as defendants Disability Management Services ("DMS"), as well as Patrick Goodrich Investigations Claim Services and Patrick Goodrich (collectively "Goodrich").  DMS is allegedly a Connecticut citizen, while both Goodrich's entity and Goodrich are allegedly California citizens.[8]  MCIC opposed the Dorfmans' motion on October 19, 2015.[9]  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds the motion appropriate for decision without oral argument; the hearing calendared for November 23, 2015 is therefore vacated, and the matter taken off calendar.

---

[4]*Id*. at 2.

[5]*Id*., Exh. A ("Complaint").

[6]*Id*. at 5.

[7]Motion for Leave to File First Amended Complaint ("Motion"), Docket No. 11 (Sept. 18, 2015). See also Reply to Defendant Massachusetts Casualty Insurance Company's Opposition to Plaintiff's Motion for Leave to File Amended Complaint and Remand ("Reply"), Docket No. 26 (Oct. 26, 2015).

[8]Notice of Errata correcting Motion for Leave to File First Amended Complaint, Docket No. 19 (Sept. 30, 2015), Exh. 1 ("Proposed FAC").

[9]Memorandum in Opposition to Motion for Leave to File Amended Complaint and Remand ("Opposition"), Docket No. 21 (Oct. 19, 2015).

# I. BACKGROUND AND PROCEDURAL POSTURE

## A.      Allegations in the Complaint

The Dorfmans allege that Robert Dorfman ("Robert") was in a contractual relationship with MCIC.[10]   He allegedly became disabled and filed a claim with MCIC; it purportedly delayed responding to the claim and denied it prior to accepting the claim ultimately.[11]   MCIC also purportedly attempted to buy out the policy rather than continue paying monthly benefits; Robert declined this offer.[12]   Thereafter, MCIC allegedly engaged in abusive practices and conduct toward Robert.   These included refusing to pay annual increases required by the contract, repeatedly scheduling and then canceling medical examinations, repeatedly requiring that Robert be interviewed by its retained psychiatrist, who fabricated claims concerning Robert, vandalizing Robert's vehicle, sending investigators to sit outside Robert's home, sending individuals to photograph Robert and his home, posting private medical information on the door of his home, disparaging Robert to others in the medical community, and interfering with Robert's ability to change his career.[13]   Dorfman alleges that MCIC's intentionally abusive practices and harassing conduct caused severe emotional distress, stress, anxiety, and humiliation that directly and proximately caused Robert's death.[14]   Robert allegedly committed suicide by shooting himself in the head on April 12, 2013.[15]

The complaint pleads claims for wrongful death, bad faith denial of benefits, and intentional

---

[10]Complaint, Attachment for First Cause of Action, at 4.   Although not specified in the complaint, it appears that Robert was covered by a disability insurance policy issued by MCIC.

[11]*Id.*

[12]*Id.*

[13]*Id.*

[14]*Id.*

[15]Notice of Removal, Exh. E (Oregon Health Authority Center for Health Statistics Certificate of Death).

infliction of emotional distress.[16]  The Dorfmans seek wrongful death damages that include loss of financial support, loss of the gifts and benefits Robert would have bestowed on his widow and son, funeral and burial expenses, the reasonable value of household services Robert would have provided, and the loss of Robert's love, companionship, care, affection, society, and training and guidance.[17] In addition, the Dorfmans seek punitive damages based on allegations that MCIC acted maliciously, fraudulently and oppressively; that it intended to cause injury by its conduct, or that it acted with knowledge that it was probable that Robert would suffer injury; and that its conduct was despicable and in willful and conscious disregard of Robert's rights.[18]  The Dorfmans allege that MCIC's officers, directors, and/or managers had advance knowledge of the unfitness of the employees and agents who committed the acts, and employed them with a conscious disregard for Robert's rights, and/or authorized or ratified those employees' and agents' acts by failing to take steps to stop their conduct or remediate their conduct despite actual knowledge.[19]

### B.    Allegations in Dorfman's Proposed Amended Complaint

As stated above, the Dorfmans' proposed first amended complaint seeks to add DMS, allegedly a Connecticut citizen, and Goodrich and his entity, allegedly California citizens as defendants.  The facts and claims pled are those alleged in the original complaint.

## II.  DISCUSSION

### A.    Legal Standard Governing Motions for Leave to Amend Complaint

Generally, motions to amend a complaint to add new parties are governed by Rule 15 of the Federal Rules of Civil Procedure.  Rule 15 mandates that leave to amend be freely granted whenever justice requires.  This policy is applied with "extraordinary liberality."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *see also AmerisourceBergen Corp. v. Dialysist*

---

[16]Complaint, ¶ 10.

[17]*Id.*

[18]Complaint, Exemplary Damages Attachment, at 7.

[19]*Id.*

*West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) ("Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires").  Courts may deny leave to amend where the proposed amendment would be futile, where it is sought in bad faith, or where it will create undue delay. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992); see also *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

Rule 15, however, "does not apply when a plaintiff amends her complaint after removal to add a diversity destroying defendant." *Greer v. Lockheed Martin*, No. CV 10–1704 JF (HRL), 2010 WL 3168408, *4 (N.D. Cal. Aug. 10, 2010) (quoting *Chan v. Bucephalus Alternative Energy Group, LLC*, No. C 08–04537, 2009 WL 1108744, *3 (N.D. Cal. Apr. 24, 2009) (internal quotation marks omitted)).  This type of amendment is instead analyzed under 28 U.S.C. § 1447(e), which states that, "if after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court."  28 U.S.C. § 1447(e).  "The language of § 1447(e) is couched in permissive terms and it clearly gives the district court the discretion to deny joinder." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998).

When deciding whether to permit joinder under § 1447(e), "a court should consider: (1) whether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would prevent the filing of a new action against the new defendant should the court deny joinder; (3) whether there has been unexplained delay in seeking the joinder; (4) whether the joinder is solely for the purpose of defeating federal jurisdiction; and (5) whether the claim against the new party seems valid." *Clinco v. Roberts*, 41 F.Supp.2d 1080, 1081–02 (C.D. Cal. 1999) (citing William Schwarzer, et al., CALIFORNIA PRACTICE GUIDE, FEDERAL CIVIL PROCEDURE BEFORE TRIAL, 2D–202, § 2:1078 (1999) (citing cases)).  A court's decision under § 1447(e) is reviewed for abuse of discretion.  See *Newcombe*, 157 F.3d at 691.

As noted, the Dorfmans seek to add Goodrich and his entity.  Like the Dorfmans, these proposed defendants are citizens of California.  The court thus evaluates the motion under § 1447(e) to the extent the Dorfmans seek to add these parties as defendants.  To the extent they seek to add

1    DMS, however, the motion is governed by Rule 15(a), as DMS will not destroy complete diversity.

2    **B.    Whether the Court Should Permit the Dorfmans to File an Amended Complaint**

3    **1.    Whether the Dorfmans' Claims Against DMS and Goodrich Seem Valid**

4    **or Whether Amendment Would be Futile**

5    Under both § 1447(e) and Rule 15(a), a court must determine whether the claims the

6    plaintiffs seek to add are meritorious. Specifically, a court deciding a motion under § 1447(e) must

7    determine whether the claims to be added seem valid. *Clinco*, 41 F.Supp.2d at 1081-82. A court

8    deciding whether to permit amendment under Rule 15(a) may deny the motion if the proposed

9    amendment would be futile. See *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 188 (9th Cir.

10   1987); see also *Saul*, 928 F.2d 829, 843 (9th Cir. 1991). "Futility of amendment can, by itself,

11   justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.

12   1995). Where the theory presented in an amendment lacks a legal foundation, or where prior

13   attempts have failed to cure a deficiency and it is clear that the proposed amendment similarly does

14   not correct the defect, the court has discretion to deny a motion to amend. See *Shermoen v. United*

15   *States*, 982 F.2d 1312, 1319 (9th Cir. 1992). The standard used to test the legal sufficiency of a

16   proposed amendment is that employed in considering the sufficiency of a pleading challenged under

17   Rule 12(b)(6). See *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998) ("Although

18   there is a general rule that parties are allowed to amend their pleadings, it does not extend to cases

19   . . . where the amended complaint would also be subject to dismissal"). A defendant challenging

20   an amended complaint bears the burden of establishing that the proposed amendment is futile. *Mead*

21   *v. City First Bank of DC, N.A.*, 256 F.R.D. 6, 8 (D.D.C. 2009) ("A defendant bears the burden to

22   show futility. . . . City Bank has not shown that there is no basis for this court's jurisdiction, and

23   has not carried its burden of establishing that granting leave to amend the complaint would be

24   futile").

25

26

27

28

### a.    Whether All of the Claims are Time-Barred

The statute of limitations for intentional infliction of emotional distress is two years.  See CAL. CODE CIV. PROC. § 335.1 (providing a two-year statute of limitations for claims involving "injury to . . . an individual caused by the wrongful act or neglect of another); *Johnson v. Lucent Technologies Inc*., 653 F.3d 1000, 1008 (9th Cir. 2011) ("the statute of limitations [for intentional infliction of emotional distress] under [California law] is two years"); *Miller v. Bank of Am., Nat. Ass'n*, 858 F.Supp.2d 1118, 1127 (S.D. Cal. 2012) ("In California, intentional and negligent infliction of emotional distress claims have a two-year statute of limitations").  The statute of limitations for wrongful death is also two years. CAL. CODE CIV. PROC. § 335.1; see *San Diego Gas & Elec. Co. v. Superior Court*, 146 Cal.App.4th 1545, 1549 (2007) ("A two-year limitations period applies to Nicole's wrongful death and survivor causes of action").  Finally, the statute of limitations for bad faith denial of insurance benefits is likewise two years.  CAL. CODE CIV. PROC. § 339(1); see *Heighley v. J.C. Penney Life Ins.*, 257 F.Supp.2d 1241, 1258 (C.D. Cal. 2003) (applying a two-year statute of limitations to a bad faith denial claim); see also *Flynn v. Paul Revere Ins. Group*, 2 Fed. Appx. 885, 885 (9th Cir. Jan. 25, 2001) (Unpub. Disp.) (same).  The Dorfmans concede their claims accrued on April 12, 2013, upon Robert's death, and that absent tolling or relation back, claims against the new defendants would be time-barred.

They argue, however, that the claims relate back to the filing of the original complaint.[20] Federal law – specifically Rule 15(c) of the Federal Rules of Civil Procedure – governs whether claims relate back.  "Although at one time there was much debate over how a district court in a diversity action should choose between a Federal Rule of Civil Procedure and a contrary state provision, the question is no longer in doubt."  *Santana v. Holiday Inns, Inc*., 686 F.2d 736, 740 (9th Cir. 1982).  In *Santana*, the Ninth Circuit held that if the relation back provision of Rule 15(c) conflicted with state substantive law, "[Supreme Court precedent] command[ed] the application of Rule 15(c)."  *Id.* (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)); see also *Richardson v. HRHH Gaming Senior Mezz, LLC*, __ F.Supp.3d __, 2015 WL 1691972, *6 (D. Nev. Apr. 14, 2015)

---

[20]Reply at 9.

1 (applying Rule 15(c) in a diversity action); *Sarkizi v. Graham Packaging Co.*, No. 1:13-CV-1435

2 AWI SKO, 2014 WL 6090417, *5 (E.D. Cal. Nov. 13, 2014) (same); see also *Milligan v. Am.*

3 *Airlines, Inc.*, 577 Fed. Appx. 718, 719 (9th Cir. June 5, 2014) (Unpub. Disp.) (holding in the

4 context of a state law claim that "[c]ontrary to the district court's decision, Federal Rule of Civil

5 Procedure 15(c) controls, not [California law]"). This view is shared by other circuits as well. See,

6 e.g., *Morel v. DaimlerChrysler AG*, 565 F.3d 20, 25 (1st Cir. 2009) (holding that "Rule 15(c) applies

7 in a diversity case notwithstanding the incidence of a more restrictive state rule"); *Johansen v. E.I.*

8 *Du Pont De Nemours & Co.*, 810 F.2d 1377, 1380 (5th Cir. 1987) ("When a federal rule of civil

9 procedure specifically covers a particular situation, a federal diversity court is required to apply the

10 federal rule unless application of the federal rule violates the Enabling Act or the Constitution. . .

11 . Therefore, we conclude that Rule 15(c), the federal relation back rule, applies and the district court

12 erred in applying the Texas relation back rule"); *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 611

13 (4th Cir. 1980) ("We think that *Hanna* generally commands application of Fed.R.Civ.P. 15(c) in the

14 face of a contrary state rule").

15   Rule 15(c), however, states that an amendment relates back when, *inter alia*, "the law that

16 provides the applicable statute of limitations allows relation back." FED.R.CIV.PROC. 15(c)(1)(A).

17 Courts have interpreted this language as incorporating a state's relation back doctrine only when

18 state law is more permissive than Rule 15(c), however. *Morel*, 565 F.3d at 26 ("The provision

19 cements in place a one-way ratchet; less restrictive state relation-back rules will displace federal

20 relation-back rules, but more restrictive state relation-back rules will not"); see FED.R.CIV.PROC.

21 15(c)(1), Advisory Committee Notes (noting that the incorporation of state law provision "is

22 intended to make it clear that the rule does not apply to preclude any relation back that may be

23 permitted under the applicable limitations law. . . . Whatever may be the controlling body of

24 limitations law, if that law affords a more forgiving principle of relation back than the one provided

25 in this rule, it should be available to save the claim").

26   The claims alleged in the proposed first amended complaint against DMS and Goodrich

27 would likely relate back; as a consequence, they are not futile or non-meritorious on timeliness

28 grounds. California Code of Civil Procedure § 474 is the state relation-back statute. It provides that

"when the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint, or the affidavit if the action is commenced by affidavit, and such defendant may be designated in any pleading or proceeding by any name, and when his true name is discovered, the pleading or proceeding must be amended accordingly . . . ." CAL. CODE CIV. PROC. § 474. The Dorfmans assert that they were ignorant of the names of Goodrich and DSM.[21] See *Dover v. Sadowinski*, 147 Cal.App.3d 113, 116 (1983) (stating that "lack of knowledge of the true name of a defendant must be 'real and not feigned'").

California Code of Civil Procedure §§ 474 and 583 operate together to require that Doe defendants be served with an amended complaint within three years from the filing of the original complaint. See CAL. CODE CIV. PROC. § 583.210(a) (formerly § 581a); *Lindley v. Gen. Electric Co.*, 780 F.2d 797, 799 (9th Cir. 1986) (citing CAL. CODE CIV. PROC. §§ 474, 581a); *Warren v. Atchison, T. & S. F. Ry. Co.*, 19 Cal.App.3d 24, 38 (1971) ("It is established that, as to a party named in the original complaint, the action commences for purposes of section 581a on the date of the filing of the complaint. The same rule is appropriate where the defendant was named in the original complaint by fictitious name" (internal citations omitted)); see *Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1118 (1988) ("From the time such a [fictitious] complaint is filed, the plaintiff has three years to identify and serve the defendant").

Under § 474, the defendant identified by a fictitious name is considered a party from the commencement of the suit for statute of limitations purposes. See *Lindley*, 780 F.2d at 799; *Rumberg v. Weber Aircraft Corp.*, 424 F.Supp. 294, 297 (C.D. Cal. 1976); see also *Palomino v. Stanton*, No. C 96-2984 FMS, 1998 WL 196461 *3 (N.D. Cal. Apr. 21, 1998) (Unpub. Disp.) ("The defendant identified by true name in the amendment is considered a party to the action from its commencement for purposes of the statute of limitations"). "California's policy in favor of litigating cases on their merits requires that the fictitious name statute be liberally construed." *Rumberg*, 424 F.Supp. at 297 (citing *Barnes v. Wilson*, 40 Cal.App.3d 199 (1974)). "The California scheme, as embodied in [Code of Civil Procedure §§ 335.1, 339,] . . . 474, and 581a, requires [that] a plaintiff

---

[21]Declaration of Valerie Dorfman ("Dorfman Decl."), Docket No. 26-1 (Oct. 26, 2015).

1   . . . initiate an action within [two] year of its accrual in order to take advantage of the extra time

2   allotted to ferret out unknown defendants.  The prompt commencement of the action provides the

3   plaintiff with judicially enforceable discovery tools and thus enhances the likelihood of early

4   detection and notification of unknown defendants." *Id.* at 298.  Here, the original complaint was

5   filed April 10, 2015; plaintiffs seek leave to amend to substitute the true names of certain fictitious

6   defendants well within three years of the commencement of the action.  The court therefore finds

7   that the amendment would likely relate back, and that the statute of limitations is not a bar to a

8   finding that the claims are likely valid.  The court thus turns to the merits of each of the claims.

9             **b.    Intentional Infliction of Emotional Distress**

10          "The elements of the tort of intentional infliction of emotional distress are: (1) extreme and

11   outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

12   probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional

13   distress; and (3) actual and proximate causation of the emotional distress by the defendant's

14   outrageous conduct. . . .  Conduct to be outrageous must be so extreme as to exceed all bounds of

15   that usually tolerated in a civilized community."  *Christensen v. Superior Court*, 54 Cal.3d 868, 903

16   (1991) (quoting *Davidson v. City of Westminster* 32 Cal.3d 197, 209 (1982) (internal quotation

17   marks omitted)).  The defendant must have engaged in "conduct intended to inflict injury or engaged

18   in [the conduct] with the realization that injury [would] result." *Id.*

19          MCIC argues that none of the plaintiffs has standing to assert a claim for intentional infliction

20   of emotional distress because the claim did not survive Robert Dorfman's death.  Since Valerie

21   Dorfman asserts this cause of action solely as Robert's representative, and not in her individual

22   capacity, the claim is valid only if a cause of action for intentional infliction of emotional distress

23   survives a person's death.  Recovery in an "action or proceeding by a decedent's personal

24   representative or successor in interest on the decedent's cause of action . . . [, however,] do[es] not

25   include damages for pain, suffering, or disfigurement."  CAL. CODE CIV. PROC. § 377.34.  Courts

26   have concluded that intentional infliction of emotional distress claims fall within this exception, and

27   that such claims asserted by a decedent's representative are invalid.  See, e.g., *Copeland v. County*

28   *of Alameda*, Case No. 12–cv–04286–JST, 2014 WL 1266198, *3 (N.D. Cal. Mar. 21, 2014)

("Plaintiffs cannot assert an IIED claim on behalf of the decedent, because emotional distress damages do not survive the death of the person who suffered them"); *Berkley v. Dowds*, 152 Cal.App.4th 518, 530 (2007) (holding that a complaint failed to state a claim for IIED because emotional distress damages do not survive a person's death).  Thus, Valerie Dorfman's intentional infliction of emotional distress claims, which she asserts as Robert's representative, does not appear to be valid, and permitting amendment to add it would be futile.

Even if the claim were asserted by the Dorfmans in their individual capacities, moreover, it is unlikely it would be valid.  See *Copeland*, 2014 WL 1266198 at *3 ("[P]laintiffs lacked 'standing to sue for intentional infliction of emotional distress' because they 'have not alleged that the conduct of any of the defendants was directed primarily at them, was calculated to cause them severe emotional distress, or was done with knowledge of their presence and of a substantial certainty that they would suffer severe emotional injury,'" quoting *Christensen v. Superior Court*, 54 Cal.3d 868, 906 (1991)).  The Dorfmans do not allege facts indicating that MCIC and the proposed new defendants intended to injure them emotionally or knew that such injury was substantially certain to occur.  On the facts currently alleged, therefore, the intentional infliction of emotional distress claim does not appear valid.

### c.    Bad Faith Denial

MCIC next contends that the bad faith claim is not valid against either Goodrich or DMS because neither was a party to the underlying insurance contract between Robert and MCIC.  As a result, it asserts, neither can be held liable for tortious breach of the insuring agreement.  MCIC cites *Austero v. National Cas. Co.*, 62 Cal.App.3d 511 (1976), where the court held that "liability for 'bad faith' has been strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of an underlying contractual relationship.  Where no such relationship exists, no recovery for 'bad faith' may be had." *Id.* at 517.

The fact that neither Goodrich nor DMS was a party to the insuring agreement appears fatal

to the cause of action.[22]  Valerie Dorfman counters that DMS and Goodrich can be held liable for tortious breach of the insuring agreement on *respondeat superior* grounds, because "at all relevant times DMS and Goodrich acted as agents for MCIC in doing the wrongs alleged in the First Amended Complaint."[23]  This argument misapprehends the import of a *respondeat superior* finding. If it is true that DMS and Goodrich at all times acted within the scope of their agency for MCIC, and caused MCIC to breach its contract, their actions could be used to show a breach *by MCIC*.  An agent, however, "does not become a party to the contract [of its principal], and is not subject to liability on it, unless the agent and the third party so agree."  RESTATEMENT (THIRD) OF AGENCY § 7.01 com. b.

For this reason, the California Supreme Court has declined to extend liability for bad faith denial claims to agents of the contracting party under either an agency or conspiracy theory.  See *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 576 (1973) ("Plaintiff alleges that Brown, the insurance adjusting firm, and its employee, Busching, and Cummins, the law firm, and its employee, Ricketts, were the agents and employees of defendant insurers and of each other and were acting within the scope of that agency and employment when they committed the acts attributed to them.  However, plaintiff contends that these non-insurer defendants breached only the duty of good faith and fair dealing; therefore, we need not consider the possibility that they may have committed another tort in their respective capacities as total strangers to the contracts of insurance.  Obviously, the non-insurer defendants were not parties to the agreements for insurance; therefore, they are not, as such, subject to an implied duty of good faith and fair dealing.  Moreover, as agents and employees of the defendant insurers, they cannot be held accountable on a theory of conspiracy.  This rule . . . 'derives from the principle that ordinarily corporate agents and employees acting for and on behalf of the corporation cannot be held liable for inducing a breach of the corporation's contract since being in a confidential relationship to the corporation their action in this respect is privileged.'

---

[22]Although Valerie Dorfman was not a party to the insuring agreement, she sues on behalf of Robert, who was a party.

[23]See Reply at 6.

1  Accordingly, the judgment of dismissal in favor of the non-insurer defendants must be affirmed");

2  see also *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 512 (1994) (noting that

3  in *Gruenberg v. Aeta Ins. Co*, the California Supreme Court "relied on two independent principles:

4  (1) the 'non-insurer defendants were not parties to the agreements for insurance; therefore, they

5  [were] not, as such, subject to an implied duty of good faith and fair dealing'; and (2) duly acting

6  agents and employees cannot be held liable for conspiring with their own principals (the 'agent's

7  immunity rule')"); *Doctors' Co. v. Superior Court*, 49 Cal.3d 39, 41–42, 44 (1989) (rejecting an

8  insured's allegations of a conspiracy among an insurer, attorney and expert to violate Insurance

9  Code § 790.03 because a cause of action for civil conspiracy does not arise "if the alleged

10 conspirator, though a participant in the agreement underlying the injury, was not personally bound

11 by the duty violated by the wrongdoing and was acting only as the agent or employee of the party

12 who did have that duty").

13     Consequently, it does not appear that Valerie Dorfman's bad faith denial claim against DMS

14 and Goodrich is viable.

15                    **d.    Wrongful Death**

16     A decedent's surviving spouse and surviving children, among others, can assert a wrongful

17 death claim under California law.  CAL. CODE CIV. PROC. § 337.60, *et seq*.  "The elements of the

18 cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death,

19 and the damages, consisting of the *pecuniary loss* suffered by the *heirs*."  *Chipman v. Nelson*, No.

20 2:11–cv–2770–TLN–EFB PS, 2015 WL 5330143, *11 (E.D. Cal. Sept. 11, 2015) (quoting *Quiroz

21 v. Seventh Ave. Ctr.*, 140 Cal.App.4th 1256, 1263 (2006) (emphasis original)); *Deen v. City of

22 Redding*, Civ. No. S–13–1569 KJM CMK, 2014 WL 1513353, *6 (E.D. Cal. Apr. 11, 2014).  A

23 survivor can bring a wrongful death claim where the decedent has committed suicide.  "[W]here the

24 defendant intended, by his conduct, to cause serious mental distress or serious physical suffering,

25 and does so, and such mental distress is shown by the evidence to be 'a substantial factor in bringing

26 about' the suicide, a cause of action for wrongful death results, whether the suicide was committed

27 in a state of insanity, or in response to an irresistible impulse, or not."  *Tate v. Canonica*, 180

28 Cal.App.2d 898, 909 (1960) (internal citations omitted); see also *Nally v. Grace Community Church*,

47 Cal.3d 278, 300 (1988) ("under *Tate*, a plaintiff may resist a demurrer to a wrongful death action for intentional conduct leading to suicide if he can allege facts sufficient to show that defendant's conduct was outrageous and a substantial factor in the decedent's suicide").

The Dorfmans' proposed first amended complaint does not allege sufficient facts to plead a viable wrongful death claim against DMS and Goodrich.  Plaintiffs have merely added Goodrich and DMS as defendants; they have not pled additional facts concerning DMS's and Goodrich's actions, words, or other conduct showing that their conduct might have been a substantial factor in causing Robert Dorfman's suicide.  Indeed, the proposed amended complaint fails to allege *any* actions taken by either of DMS or Goodrich, let alone "outrageous" conduct.[24]  *Nally*, 47 Cal.3d at 300.  Given the lack of any factual basis for the claim, the court cannot conclude that the Dorfmans may have a meritorious wrongful death claim against either of the two proposed defendants.

### e.    Conclusion as to Validity/Futility

For the reasons stated, although the court concludes that the claims against DMS and Goodrich are likely not time-barred, they do not appear to be viable or meritorious.  As consequence, the court finds that this factor does not support permitting an amendment to add Goodrich and his entity under § 1447(e), and that allowing amendment to add DMS would be futile under Rule 15.

### 2.    Whether Goodrich is Needed for Just Adjudication and Would Be Joined under Rule 19(a)

In determining whether an amendment that will destroy diversity should be permitted, courts also consult Rule 19(a)'s standard for joining parties.  See *Clinco*, 41 F.Supp.2d at 1081–02.  "Rule 19 governs compulsory party joinder in federal district courts."  *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 778 (9th Cir. 2005).  In relevant part, Rule 19(a) provides that:

"[a] person who is subject to service of process and whose joinder will not deprive

---

[24]The only facts concerning Goodrich's involvement in the record are statements by MCIC and Goodrich concerning the circumstances under which MCIC engaged Goodrich to perform services. (See Declaration of Todd Higgins in Support of Opposition to Motion for Leave to File First Amended Complaint ("Higgins Decl."), Docket No. 21-3 (Oct. 19, 2015), Exh. F; Declaration of Patrick Goodrich in Support of Opposition to Motion for Leave to File First Amended Complaint ("Goodrich Decl."), Docket No. 21-2 (Oct. 19, 2015), Exh. B).

the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. . . .   If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action."

Rule 19(a) is "concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Northrop Corp. v. McDonnell Douglas Corp.,* 705 F.2d 1030, 1043 (9th Cir. 1983) (citing FED.R.CIV.PROC. 19, Advisory Committee Note).

Goodrich and his entity are not indispensable parties.[25]  The court could readily provide complete relief between the Dorfmans and MCIC in the absence of their joinder.  It is undisputed that Goodrich was a third-party vendor retained by DMS to interview the decedent.[26]  It is also undisputed that Goodrich was MCIC's agent.[27]  The Dorfmans allege that Goodrich and MCIC were joint tortfeasors.[28]  Agents and joint tortfeasors, however, are not generally deemed indispensable parties, because full liability can be imposed on the principal or joint tortfeasor even if they are not joined. See *Lauer v. Extendicare Homes, Inc.*, No. CV 06-5124FDB, 2006 WL 925137, *1 (W.D.

---

[25]Although the Dorfmans argue that they can add the new defendants under Rule 20(a), which governs permissive joinder of parties (see Motion at 5), the rule that governs for purposes of  § 1447(e) is Rule 19(a), which concerns compulsory joinder.  See *Clinco*, 41 F.Supp.2d at 1081–02.

[26]Opposition at 4–5; Motion at 4.

[27]Opposition at 10; Reply at 2.

[28]Reply at 5.

Wash. Apr. 7, 2006) ("Now that a non-diverse defendant is sought to be added, there are two options under 28 U.S.C. § 1447(e): deny joinder or permit joinder and remand this matter.  Because joint tortfeasors and principals and agents are not indispensable parties required to be joined, and giving consideration to the other factors cited by Defendants, the joinder of Laura Copperwheat is denied"); see also *Anrig v. Ringsby United*, 603 F.32d 1319, 1326 (9th Cir. 1978) (finding that corporate officers were not indispensable parties an action against the corporation); *Mullaney v. Hilton Hotels Corp.*, 634 F.Supp.2d 1130, 1158 (D. Haw. 2009) ("A joint tort-feasor is not an indispensable party, quoting *Unition Paving Co. v. Downer Corp.*, 276 F.2d 468, 471 (9th Cir. 1960)); *Brewer v. Indymac Bank*, 609 F.Supp.2d 1104, 1124 (E.D. Cal. 2009) (holding that a mortgage broker was not an indispensable party in an action against a lender).   This factor therefore weighs against amendment.

### 3.     Whether There Has Been Unexplained Delay in Seeking Joinder

Courts  consider delay in determining whether to allow amendment to add a non-diverse party.  See, e.g., *Lopez v. General Motors Corp.*, 697 F.2d 1328, 1332 (9th Cir. 1983) (holding that a delay of six months was unreasonable); cf. *Clinco*, 41 F.Supp.2d at 1083 (finding that a request to amend less than six weeks after the filing of the complaint was timely).  This is also true of requests to amend under Rule 15(a).  See *DCD Programs*, 833 F.3d at 186 (noting that "undue delay" is a factor considered by courts in deciding whether to grant leave to amend).

The Dorfmans filed this action on April 10, 2015.  MCIC was served on July 22, 2015, and removed the case to federal court on August 20, 2015.  On September 18, 2015, the Dorfmans filed this motion.

Many district courts measure delay from the date of removal.  See *Nazario v. Deere & Co.*, 295 F.Supp.2d 360, 363 (S.D.N.Y. 2003) ("Delay in seeking amendment is measured from the date of removal"); *Da Cruz v. Towmasters of New Jersey, Inc*., 217 F.R.D. 126, 134 (E.D.N.Y. 2003) ("Delay is measured from the time of removal"); *Rosenthal v. Life Fitness Co.*, 977 F.Supp. 597, 600 (E.D.N.Y. 1997) ("Because delay is measured from the time of removal, there is none," citing *Young v. Simon Ladder Towers, Inc*., No. 96-CV-0189E(SC), 1996 WL 685753, *1 (W.D.N.Y. Nov. 26, 1996)).  Because this case was removed on August 20, 2015, and the Dorfmans filed their motion

less than a month later on September 18, 2015, there was no significant delay when measured from the date of removal.

Even measuring delay from the date the action was filed in state court, the delay is not unreasonable. California district courts "have held that amendment as late as nine months after the original complaint was filed is still timely under Section 1447(e) if 'no dispositive motions have been filed' and the 'discovery completed thus far will be relevant whether the case is litigated in [federal] court or state court.'" See *Negrete v. Meadowbrook Meat Co.*, No. ED CV 11-1861 DOC, 2012 WL 254039, *4-5 (C.D. Cal. Jan. 25, 2012) (citing *Yang v. Swissport USA, Inc.*, No. C 09–03823 SI, 2010 WL 2680800, *4 (N.D. Cal. July 6, 2010)). In *Negrete*, plaintiff filed a motion for leave to amend more than five months after filing an action in state court. Because no dispositive motions were pending and because there was no reason to conclude that the discovery completed in federal court would not be relevant if the action returned to state court, the court concluded there was no delay.

This case is analogous to *Negrete*. Here, in fact, the delay was even shorter. There are no dispositive motions pending, and the parties do not dispute that discovery has not yet commenced. Accordingly, the court finds no delay even if it uses the date the complaint was filed in state court as the measuring point. This factor thus weighs in favor of granting leave to amend.

**4.     The Extent to Which the Statute of Limitations Would Affect Plaintiffs' Ability to File a Separate Suit Against Goodrich**

In determining whether an amendment that destroys complete diversity should be allowed, courts must consider "whether the statute of limitations would prevent the filing of a new action against the new defendant should the court deny joinder." *Clinco*, 41 F.Supp.2d at 1081. As noted, the statute of limitations on all of plaintiffs' claims is two years. Since the claims accrued on the date of Robert's death – April 12, 2013 – the statute of limitations on all three claims has run.

MCIC admits that the Dorfmans' claims against Goodrich would be time-barred if they were required to refile them in state court.[29] It argues, however, that this factor does not support

---

[29]Opposition at 11.

permitting amendment because the claims against Goodrich are *also* time-barred in federal court because the claims do not relate back to the filing of the Dorfmans' complaint.[30]  Because the court earlier concluded that, were the Dorfmans permitted to amend their complaint to add DMS and Goodrich, the three claims against them would relate back, denying them the opportunity to amend their complaint in this action would deprive them of the opportunity to obtain relief against Goodrich in state court.  See *Oettinger v. The Home Depot*, No. C 09–01560 CW, 2009 WL 2136764, *3 (N.D. Cal. July 15 2009).   At the same time, however, the court doubts that the Dorfmans would succeed on the merits of their claims even if they were able to bring them in state court.  While this factor weighs somewhat in favor of allowing the amendment, therefore, it does not weigh strongly in favor of that result.

### 5.        The Dorfmans' Motive for Seeking Amendment

The final factor courts analyze is plaintiffs' motive for seeking leave to amend.  "[T]he motive of a plaintiff in seeking the joinder of an additional defendant is relevant to a trial court's decision to grant the plaintiff leave to amend his [or her] original complaint." *Desert Empire Bank v. Ins. Co. of N. America*, 623 F.2d 1371, 1376 (9th Cir. 1980).  "[A] trial court should look with particular care at such motive in removal cases, when the presence of a new defendant will defeat the court's diversity jurisdiction and will require a remand to the state court." *Id.*  Likewise, a court deciding whether to grant a motion for leave to amend under Rule 15(a) must determine the true purpose of the amendment and decide whether amendment is sought "in bad faith."  See *Eminence Capital, LLC v. Aspeon*, 316 F.3d 1048, 1052 (9th Cir. 2003).

MCIC argues that the Dorfmans' primary motivation for seeking leave to add DMS and Goodrich is a desire to destroy diversity jurisdiction.[31]  MCIC asserts that its counsel spoke with the Dorfmans' lawyer on August 14, 2015, one week before the notice of removal was filed, and said

---

[30]*Id.*

[31]Opposition at 14.

MCIC intended to remove the action to federal court.[32]   In response, the Dorfmans' attorney purportedly attempted immediately to file an amendment adding a non-diverse defendant;[33] MCIC concluded from this that the Dorfmans were attempting to forum shop.  MCIC argues that the Dorfmans' forum shopping motivation was apparent from the fact that they attempted to add the Harry N. Koff Agency ("Koff"), a California corporation that sold the decedent the MCIC policy in 1999; MCIC asserts there is no viable claim against Koff given the nature of the Dorfmans' other claims.[34]  When MCIC's counsel asked what the Dorfmans' theory of liability against Koff was, their lawyer purportedly conceded that he had yet to develop any theory on which Koff could be held liable.[35]

The Dorfmans' original complaint named MCIC and fictitious defendants who were purportedly MCIC's agents or employees or whose capacities were unknown.[36]  The allegations in the complaint referred to actions that would likely be performed at an administrative headquarters, such as delayed action on the claim and denial of the claim, as well as actions taken locally, such as vandalizing Robert's vehicle. [37]  Following service of the original complaint on MCIC – the known defendant – therefore, it was reasonable for the Dorfmans to attempt to discover and join parties that had participated in the allegedly wrongful behavior so that all issues could be adjudicated in a single action.  This type of decision-making does not mandate a finding of improper forum shopping.  See *Oettinger*, 2009 WL 2136764 at *3; see also *Taylor v. Honeywell Corp.*, No. C 09–4947 SBA, 2010 WL 1881459, *3 (N.D. Cal. May 10, 2010) ("Like the plaintiff in *Oettinger,* Plaintiffs' motives for amending the complaint are grounded in their desire to add valid claims

---

[32]Declaration of Martin E. Rosen in Support of Opposition to Motion for Leave to File First Amended Complaint ("Rosen Decl."), Docket No. 21-1 (Oct. 19, 2015), ¶ 4.

[33]*Id*.

[34]*Id*.

[35]*Id*., ¶ 6.

[36]Complaint at 2.

[37]*Id*. at 4.

1   against an additional defendant, thereby maximizing their prospects for a full recovery, as well as

2   to avoid the inefficiency and expense of multiple actions.  Although Plaintiffs also may have a

3   preference for state court, such a preference cannot be construed negatively any more than

4   Honeywell's preference for federal court.  The Court thus finds that this factor weighs in favor of

5   Plaintiffs"); cf. *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir.

6   2007) (stating, in the fraudulent joinder context, that there is a "general presumption" that a

7   plaintiff's sole purpose in naming defendants is not to defeat diversity jurisdiction).

8        Some district courts in the Ninth Circuit have concluded, however, that an improper purpose

9   in seeking amendment can be inferred if the proposed new claims lack merit; because there is no

10  substantive benefit in adding a meritless claim, these courts reason, the only explanation for seeking

11  leave to amend must be to destroy diversity jurisdiction.  See *McGrath v. Hope Depot U.S.A.*, 298

12  F.R.D. 601, 608–09 (S.D. Cal. 2014) ("Consideration of the fourth and fifth factors are intertwined;

13  an assessment as to the strength of the claims against the proposed new Defendants bears directly

14  on whether joinder is sought solely to divest this Court of jurisdiction.  As set forth above, the Court

15  finds that the Plaintiff's SAC includes no allegations to support a cause of action against Defendants

16  Hopper, Peralta, or Korhummel in their individual capacities separate and apart from their actions

17  in the scope of their employment by Defendant Home Depot USA, Inc.  Accordingly, the Court

18  finds that Plaintiff's claims against these defendants are weak and therefore suggestive of a motive

19  to destroy diversity"); *Larry O. Crother, Inc. v. Lexington Ins. Co.*, No. 2:11-cv-00138-MCE, 2011

20  WL 2259113, *5 (E.D. Cal. June 7, 2011) ("Consideration of the final fourth and fifth factors is

21  intertwined, since an assessment as to the strength of the claims against the proposed new defendant

22  (fifth factor) would appear to bear directly on whether joinder is sought solely to defeat diversity and

23  divest this Court of jurisdiction").

24        Combined with the timing of the Dorfmans' first effort to amend – only days after their

25  lawyer learned of MCIC's intent to remove – and its filing of this motion promptly after removal,

26  the fact that the claims appear to lack merit could suggest improper intent.  See *Clinco*, 41 F.Supp.2d

27  at 1083 & n. 2 ("Dennis Roberts removed the case on November 18, 1998 and served Clinco by

28  mail.  Clinco served Dennis Roberts with the amended complaint two days later, on November 20,

20

1    1998.  Because Clinco filed the amended complaint in this Court, he was aware of the removal.  In

2    addition, the original and first amended complaints are substantially similar.  Apart from various

3    editorial differences, the first amended complaint adds a one-sentence allegation to the first cause

4    of action and slightly alters the sixth cause of action.  In addition, the first amended version contains

5    descriptions of the new defendants.  In light of this, one could justifiably suspect that Clinco's

6    amendment of the complaint was caused by the removal rather than an evolution of his case.  This

7    factor does not support allowing amendment").  In this case, at the very least, the timing of

8    plaintiffs' efforts to amend, coupled with their proposed claims' apparent lack of merit, make this

9    factor equivocal.  While there is no strong direct evidence of improper purpose and there are

10   legitimate reasons why the Dorfmans might seek to add parties, circumstantial evidence of bad faith

11   dictates the conclusion that this factor does not weigh strongly in favor of allowing amendment.

12                    **6.    Conclusion Regarding Joinder of DMS and Goodrich**

13          Based on its analysis of the factors relevant in assessing whether to grant leave under

14   § 1447(e), the court exercises its discretion to deny the Dorfmans' motion to amend their complaint

15   to add Goodrich.  Although it is true that there has been no unreasonable delay in seeking

16   amendment, other relevant factors – the perceived invalidity of the claims and the fact that Goodrich

17   is not essential to the litigation – weigh strongly in favor of denying the motion.  See *Yang v.*

18   *Swissport USA, Inc.*, No. C 09-03823, 2010 WL 2680800, *3 (N.D. Cal. July 6, 2010) (listing the

19   § 1447(e) factors and stating that "[a]ny of the factors might prove decisive").  While there is

20   circumstantial evidence of bad faith both in terms of the proposed claims' lack of merit and the

21   Dorfmans' timing in seeking amendment, there are also legitimate reasons why amendment might

22   be sought.  Finally, although it appears that the statute of limitations would bar any claims the

23   Dorfmans seek to assert in state court against Goodrich, the claims would, as the court has found,

24   likely fail in any event, substantially mitigating the importance of this factor.

25          The court balances all of the factors and concludes that the Dorfmans should not be allowed

26   to add Goodrich as a defendant and destroy complete diversity.  See *Namvar v. Select Portfolio*

27   *Serv., Inc.*, No. 3:14-cv-0600-GPC, 2014 WL 4955707, *4 (S.D. Cal. Oct. 1, 2014) ("The Court .

28   . . finds that, as the First Amended Complaint states no claims against Defendants Brignac, Riley,

or CRC, the [§ 1447(e)] factors weigh in favor of denying joinder under section 1447(e) for the purposes of considering Plaintiff's Motion to Remand.  Specifically, joinder of these non-resident Defendants against whom no causes of action are asserted in the First Amended Complaint is not needed for just adjudication of this matter; Plaintiff has asserted no valid claims against these Defendants; and denial of joinder will not prejudice Plaintiff.  Accordingly, the Court DENIES joinder of the non-diverse Defendants based on the allegations against them in the First Amended Complaint and DENIES Plaintiff's Motion to Remand based on the joinder of these non-diverse diversity-destroying Defendants").  For many of the same reasons, the court denies the motion to the extent the Dorfmans seeks to add DMS as a defendant under Rule 15.  Although MCIC has not identified any prejudice that it or DMS would suffer if DMS were added, and there has been no delay or bad faith, it appears the amendment is futile.   Consequently, the court exercises its discretion to deny the motion to add DMS on the ground that claims against DMS would be futile. See *Bonin*, 59 F.3d at 845 ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend"); *Shermoen*, 982 F.2d at 1319 ("Following the dismissal of their complaint, appellants sought leave of the court to file an amended complaint joining all the officers of the Hoopa Valley Tribal Council as defendants.  The district court denied the appellants' motion, finding that 'there was no possibility of stating a cause of action.' . . .  If this finding was correct, the dismissal would not be an abuse of discretion, for a district court does not err in denying leave to amend where the amendment would be futile").

> **C.**     **Whether the Court Should Remand the Action to State Court**

The court has denied the Dorfmans' motion to join Goodrich.  Because the citizenship of Goodrich and his entity was the only basis upon which the Dorfmans sought remand, the court denies that motion as well.

///

///

## III.  CONCLUSION

For the reasons stated, the court denies Dorfman's motion for leave to amend.  It therefore denies Dorfman's motion to remand.

DATED: November 19, 2015

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE